UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHENDEA ANDERSON,<br><br>　　　　　　　　　　Plaintiff,<br><br>-against-<br><br>KIRSCHENBAUM & PHILLIPS, P.C., and MEREDITH UNGER,<br><br>　　　　　　　　　　Defendants. | No. 25-10046<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## PRELIMINARY STATEMENT

1.　Plaintiff brings this action to challenge the unlawful conduct of Defendants Kirschenbaum & Phillips, P.C. ("K&P), a debt collection law firm, and Meredith Unger, one of its attorneys, to extract money from Plaintiff by improperly executing on an old New York City Civil Court judgment and flouting consumer protections in an effort to enrich themselves at the expense of Plaintiff.

2.　Shendea Anderson was going about her life when, out of nowhere, she received an income execution that threatened to garnish her paycheck. The execution was from a law firm she had never heard of, on behalf of a company she had never heard of, to collect on a purported judgment issued in a case against her *more than sixteen years earlier* that she had never heard of, brought by a different company she had never heard of, to collect an unidentified debt, and in which she had never been served.

3.　Defendants' practices in preparing and litigating the execution were improper and unlawful in numerous respects, though Ms. Anderson had no way of knowing that at the time.

1

Through her own tenacity and with the eventual assistance of counsel, Ms. Anderson fought for ten months, during which she went to court approximately six times (having to find others to care for her disabled family members each time) and was eventually able to stop the execution.

4. Defendants did not have or review virtually any documentation in connection with the judgment before executing on it: not the affidavit of service in the underlying litigation, not documentation sufficient to substantiate the judgment's chain of title, not any documents related to the underlying debt, not the complaint that led to the judgment, and not even the judgment itself. Then, after executing on the judgment it had never seen, K&P pursued collection against Ms. Anderson through three court hearings over the span of ten months—still without obtaining or reviewing any documents it would need to substantiate its entitlement to collect, making numerous misrepresentations and needlessly prolonging the legal proceedings in order to wear down Ms. Anderson. Indeed, Defendants have *never* provided any documentation to Ms. Anderson identifying the debt she supposedly owed, or establishing that any judgment was ever issued against her—much less one that was a valid basis for the execution.

5. Plaintiff alleges that Defendants' conduct violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the FDCPA), New York General Business Law § 349, and New York Judiciary Law § 487.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d), and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a). Declaratory relief is available pursuant to 28 U.S.C. §§ 2201(a) and 2202.

7. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because it is the district where a substantial part of the events giving rise to Plaintiff's claims occurred—namely, it is the district in which Defendants issued an income execution to Ms. Anderson and the district in which Defendants litigated against Ms. Anderson.

## PARTIES

8. Plaintiff Shendea Anderson is a natural person residing in Bronx, New York.

9. Plaintiff is a "consumer" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(3), in that Plaintiff was alleged to owe a debt stemming from an unpaid balance on a consumer account.

10. Defendant Kirschenbaum & Phillips, P.C. ("K&P") is a domestic professional service corporation organized under the laws of the State of New York with its principal place of business located at 40 Daniel St., Suite 7, Farmingdale, New York, 11735.

11. K&P is a debt collection law firm that specializes in judgment enforcement. K&P is registered as a debt collection agency with the New York City Department of Consumer and Worker Protection, with license number 2081639-DCA.

12. Defendant Meredith Unger ("Unger") is a natural person and a member of the New York Bar. At all relevant times, she was a debt collection attorney, a member of the law firm K&P, and registered with the New York State bar as a member of K&P.

13. Defendants are both "debt collectors" as defined by the FDCPA, 15 U.S.C. § 1692a(6), in that Defendants regularly use the instrumentalities of interstate commerce in their business, the principal purpose of which is the collection of debts, and are engaged in the business of collecting consumer debts via various means, including wage garnishment, bank restraint and levy, and civil debt collection lawsuits.

## FACTUAL ALLEGATIONS

14. Plaintiff Shendea Anderson is a fifty-five year old resident of Bronx, New York. Ms. Anderson works as a home care health aide, taking care of her disabled daughter who is blind. She also is a full-time caretaker for her disabled husband, who is also blind, and her elderly aunt who is eighty years old. During the relevant time period, she also worked caring for her partner's baby with severe medical issues.

15. On or around December 8, 2024, Ms. Anderson received a piece of mail labeled an Income Execution, directing the withholding of income to satisfy a judgment. This document had been issued by K&P, and signed by Unger, on December 5, 2024. It stated that Ms. Anderson owed $1,599.40, including $454.53 in interest and fees, to satisfy a judgment in *North Star Capital Acquisitions, LLC v. Anderson, Shendea* ("*North Star v. Anderson*"), Index Number 063379-08/BX, in New York City Civil Court, Bronx County.

16. The Income Execution had been mailed to her by New York City Marshal Henry Daley, along with a Notice of Garnishment.

17. The Income Execution stated that the debt was owed to judgment creditor LVNV Funding LLC ("LVNV").

18. Before receiving the Income Execution on or around December 8, 2024, Ms. Anderson had never heard of *North Star v. Anderson*. She was never served with a summons and complaint in that action. She had no other notice of the action or the judgment, and never received an assignment of judgment, a change of attorney form, or a validation notice. Ms. Anderson had never heard of LVNV, North Star, or Defendants. She did not understand why or how she had been sued; and did not initially know what steps to take to stop the executions.

4

19. The Income Execution did not identify the debt that North Star had supposedly sued about in *North Star v. Anderson*.

20. Unbeknownst to Ms. Anderson, North Star had filed *North Star v. Anderson* against her on July 21, 2008. On information and belief, the alleged debt underlying that action was years older.

21. North Star is a debt buyer: an entity that purchases debts, often for pennies on the dollar, and attempts to collect on those debts for profit.

22. On information and belief, *North Star v. Anderson* was filed to collect on a debt that North Star purchased from another creditor. However, Ms. Anderson has never been shown any documentation identifying the original creditor or what the debt was allegedly incurred for.

23. Ms. Anderson has no way of knowing whether that debt was legitimate, but, to her knowledge, she did not owe any debts that could have been the basis for *North Star v. Anderson*.

24. North Star has been repeatedly sued for FDCPA violations in the course of collecting on purchased debts, including for collecting on invalid debts and engaging in deceptive practices. *See e.g.*, *N. Star Cap. Acquisitions, LLC v. Krig* (M.D. Fla. Apr. 21, 2009) (denying North Star's Motion for Summary Judgment on FDCPA claims challenging North Star's deceptive practices; settlement class later certified); *Oei v. N. Star Cap. Acquisitions, LLC*, 486 F. Supp. 2d 1089 (C.D. Cal. 2006) (denying North Star's motion to dismiss FDCPA claims based on North Star's unlawful debt collection).

25. According to the New York City Civil Court's computer database, on November 20, 2008, a default judgment was entered against Ms. Anderson in *North Star v. Anderson*, in the amount of $1,144.87. However, Ms. Anderson has never been shown such a judgment.

26. LVNV asserts that at some point before October 5, 2020, it bought the alleged judgment against Ms. Anderson from North Star, the debt buyer that originally obtained the judgment, or from an assignee of North Star. In other words, there may have been other intermediary entities who owned the judgment.

27. LVNV is also a debt buyer. LVNV sometimes purchases New York City Civil Court judgments after they have been issued, for a fraction of their face value, and attempts to collect on those debts for profit.

28. The New York State Unified Court System has documented that many debt buyers unlawfully obtained judgments which were obtained "on the basis of insufficient or incorrect factual proof or hearsay testimony" and "sewer service," the practice of failing to lawfully serve a summons and complaint and then filing a fraudulent affidavit of service.[1]

29. On information and belief, LVNV Funding retained K&P to execute on the judgment at some point between 2020 and 2025.

**A. Defendants Did Not Send Any Notices Required by Law**

30. Each time a judgment is assigned, the judgment buyer must file an assignment of judgment with the court and serve a copy on the party against whom the judgment was entered. N.Y. C.P.L.R. § 5019(c). That party must receive actual notice of the assignment. *Id.*; *Tri City Roofers, Inc. v. Northeastern Industrial Park*, 461 N.E.2d 298, 299 (N.Y. 1984).

31. Each time a new attorney appears in a case, he or she must file a change of attorney form and serve it on the opposing party. N.Y. C.P.L.R. § 321(b).

---

[1] N.Y. Unified Court Sys., *NY Court System Adopts New Rules to Ensure a Fair Legal Process in Consumer Debt Cases* (Sept. 16, 2014), *available at* http://ww2.nycourts.gov/sites/default/files/document/files/2018-05/PR14_06.pdf.

32. In its initial communication with a consumer, or within five days thereafter, each debt collector must send a "validation notice" that informs the consumer of certain legal rights, including to dispute the debt and to be provided with the name and address of the original creditor. 15 U.S.C. § 1692g(a).

33. Ms. Anderson did not receive any notices that the law required Defendants to send. Specifically, she did not receive (a) a notice of the assignment of judgment; (b) a change of attorney form; or (c) a notice of her rights to validate the debt. On information and belief, Defendants did not send any of these notices to Ms. Anderson.

34. Receipt of the assignment of judgment, the change of attorney form, or the validation notice would have alerted Ms. Anderson to the existence of the lawsuit and judgment against her and to the identities of the entities attempting to collect on the judgments.

35. On information and belief, neither LVNV nor Defendants timely filed with the court assignments of judgment documenting LVNV's authority to enforce the judgment against Ms. Anderson

### B. Defendants Executed on the Judgment with Virtually No Documentation or Attorney Review

36. Defendants executed on the judgment against Ms. Anderson by wage garnishment. *See* N.Y. C.P.L.R. §5231.

37. Executions are issued by attorneys in their role as "as officer[s] of the court." *See id.* §§ 5222(a), 5230(b).

38. K&P stated in the Income Execution that a judgment in the amount of $1,144.87 "was duly entered in favor of the plaintiff in the office of the clerk of the within court."

39. This statement was false or misleading, since K&P did not have any basis on which to represent that the judgment was duly entered.

40. The Income Execution was signed by Defendant Unger on December 4, 2024.

41. On information and belief, before issuing the Income Execution as "officer[s] of the court" and stating that the judgment "was duly entered in favor of the plaintiff," Defendants reviewed virtually no documentation and engaged in no meaningful attorney review. Specifically, on information and belief, Defendants did not possess or review:

- The *North Star v. Anderson* affidavit of service attesting to proper service in the underlying lawsuit;
- Documentation of the chain of title sufficient to establish that LVNV owned the judgment;
- The original complaint in *North Star v. Anderson*;
- The judgment issued in *North Star v. Anderson*; or
- Any other contents of the case file of the underlying lawsuit.

42. On information and belief, Defendants did not obtain any of the documents listed above from LVNV or otherwise. Nor did Defendants take other steps to obtain them.

43. The New York City Civil Court maintains case files over three years old (up to twenty-five years old) in the city's archive for off-site storage. It typically takes approximately ten weeks for a requested archived file to become available for inspection, but some files are never made available. Any person can request an archived case file for free at any time.

44. On information and belief, Defendants never requested the relevant case file before executing on the judgment. On information and belief, to this day, Defendants have never seen the initial complaint, judgment, affidavit of service, or any documents from the underlying case file.

45. Defendants thus executed without knowing whether documents in the case file showed that the judgment or execution was, or may have been, improper.

**B. Defendants Unduly Prolonged Legal Proceedings and Made Misrepresentations to Plaintiff and the Court**

46. A consumer who wants to stop wage garnishment may move to vacate the judgment in the Civil Court that issued it. *See* N.Y. C.P.L.R. § 5015(a). In New York City Civil Court, a Motion to Vacate the Judgment ("Motion to Vacate") is typically brought by order to show cause. A consumer who was not served in the underlying lawsuit can challenge the execution by filing a Motion to Vacate for lack of personal jurisdiction. *See* N.Y. C.P.L.R. §§ 5015(a)(4); 3211(a)(8).

47. On December 9, 2024, soon after receiving the Income Execution, Ms. Anderson traveled to the Bronx Civil Court and filed a *pro se* Motion to Vacate the *North Star v. Anderson* judgment. She also filed accompanying paperwork stating that this was not her debt, that she never received anything in the mail about the case, and that she had no knowledge about it.

48. On January 21, 2025, the first court date on the Motion to Vacate, Ms. Anderson represented herself *pro se*. Attorneys from K&P appeared and represented to the Court that the debt was valid. This statement was false or misleading, since K&P did not have any basis on which to represent that the debt was valid.

49. K&P conceded that it did not possess any documents related to the judgment, and requested an adjournment to obtain documents by requesting the file from the court archive. *North Star v. Anderson* was adjourned for a second court date.

50. During the appearance, K&P did not produce any documentation proving the validity of the debt: not the affidavit of service in the underlying litigation, the documentation substantiating the judgments' chain of title, the case file, and not even the judgment itself. Upon

9

information and belief, they had never seen any of these documents.

51. At some point between December 9, 2024 and the second court date on May 8, 2025, Ms. Anderson traveled to the Bronx Civil Court to request the original court file in *North Star v. Anderson.* Ms. Anderson subsequently returned to the Court at least twice to check on the status of her court file. The court did not locate it.

52. On May 8, 2025, the second court date, Ms. Anderson again represented herself *pro se*. She was able to receive advice from a limited-scope volunteer attorney through the New York City Civil Court's Volunteer Lawyer for a Day ("VLFD") program. Attorneys from K&P appeared and again represented to the Court that the debt was valid. This statement was false or misleading, since K&P did not have any basis on which to represent that the debt was valid.

53. K&P again conceded that it did not possess any documents related to the judgment, and requested a second adjournment to obtain documents. The court noted that the hearing "was adjourned to 10-7-25 for the court to requisition the archived file."

54. Again, K&P did not produce any documentation proving the validity of the debt.

55. On information and belief, on May 8, 2025, an attorney from K&P represented orally to Ms. Anderson that the judgment in *North Star v. Anderson* was for a credit card debt from Capital One. K&P did not provide any documentation relating to the alleged debt, underlying account, or creditor. Ms. Anderson did not recall having any open credit card accounts from 2000 until 2020, or having a Capital One account during the relevant time period.

56. On May 8, 2025, the second court date, K&P encouraged Ms. Anderson to settle the case by agreeing to pay money in exchange for K&P withdrawing the Income Execution. K&P told her that she would lose the case because there was a valid, outstanding judgment against her. This statement was false or misleading, since K&P did not have any basis on which

to represent that the judgment was valid.

57. Ms. Anderson declined to settle.

58. *North Star v. Anderson* was adjourned for a third court date.

59. On October 7, 2025, the third court date, Ms. Anderson was again represented by a limited-scope volunteer attorney through the VLFD program. An attorney from K&P again appeared and represented that the debt was valid. This statement was false or misleading, since K&P did not have any basis on which to represent that the debt was valid. K&P stated the delay was due to the court's failure to obtain the court file.

60. K&P again conceded that it did not possess any documents related to the judgment, and requested a third adjournment to obtain documents. For the third time, K&P did not produce any documentation proving the validity of the debt.

61. This time, the Court granted Ms. Anderson's Motion to Vacate, and vacated the judgment. The Court noted: "Defendant filed her Order to Show Cause in December of 2024 . . . This is a third appearance . . . The undue delay is unfair and prejudicial especially given that Plaintiff has attempted to collect upon a 2008 default judgment where it could have anticipated jurisdictional defenses. Plaintiff did not produce its own documents including the affidavit of service to support its own actions."

62. Defendants unduly prolonged the legal proceedings against Ms. Anderson. On information and belief, Defendants did so to induce Ms. Anderson to drop her challenge to the execution or enter into a settlement favorable to Defendants. Defendants' actions resulted in Ms. Anderson having to go to court approximately six times and attend three court dates over the span of ten months.

**C. Defendants' Willful Conduct Caused Harm to Plaintiff**

63. Defendants' unlawful activities harmed Ms. Anderson financially and emotionally.

64. Ms. Anderson's harms included, but were not limited to: deprivation of funds (temporary or permanent) due to time and money spent to appear at multiple court dates and otherwise challenge the executions, including postage, transportation costs, and lost wages. She had to miss work each time she went to court or meetings with attorneys, which meant finding care for her disabled daughter, disabled husband, elderly aunt, and the baby under her care, and forgoing related wages.

65. Ms. Anderson also experienced emotional damages; the many court appearances and having to find temporary care for her disabled and elderly family members, and other dependents, made her feel very anxious. She thought about the lawsuit every day.

66. On information and belief, Defendants have engaged in their unlawful conduct knowingly and willfully.

67. On information and belief, Defendants have engaged in similar unlawful conduct against dozens or hundreds of other New York City consumers.

68. K&P has repeatedly been found to improperly collect on void and unenforceable judgments on behalf of debt buyers. *See e.g., Dazza v. Kirschenbaum, Phillips & Levy, P.C.*, No. CV RDB-16-3954, 2017 WL 1315510 (D. Md. Apr. 10, 2017) (denying K&P's motion to dismiss FDCPA and state law debt collection claims challenging efforts to collect on void judgments); *Dazza v. Kirschenbaum*, 1:16-cv-03954-RDB (Dist. Md. July 13, 2018), ECF 24 (certifying settlement class); *Ruffin v. Kirschenbaum & Philips P.C.*, No. 7:20-CV-05422 (PMH), 2022 WL 704943 (S.D.N.Y. Mar. 9, 2022) (upholding FDCPA and N.Y. G.B.L. § 349

claims against K&P for issuing income executions on the basis of invalid debts without meaningful review).

69. K&P has also repeatedly been sued by consumers for other types of unlawful collections; many of these cases were settled prior to any motion practice. *See e.g.*, *Lysa Vanible v. Kirschenbaum & Phillips et al.*, Case No. 1:20-cv-02177-SN (S.D.N.Y.), ECF 1 (suing K&P under FDCPA and N.Y. G.B.L. for unlawfully collecting time-barred debts not owed); *Linda Spione, et al. v. Kirschenbaum Phillips & Levy, P.C., et al.,* Case No. 7:16-cv-06211-CS (S.D.N.Y. Aug. 4, 2016), ECF 2-2 (suing K&P under FDCPA for collecting invalid debts without reviewing the validity of the judgment, where K&P knew or had reason to know plaintiffs were "sewer served"); *Maltide Reyes v. Kirschenbaum & Phillipps, P.C.*, Case No. 1:15-cv-02203-ALC (S.D.N.Y. Mar. 24, 2015) (suing K&P under FDCPA and N.Y. G.B.L. for collecting on invalid, time-barred debt); *Andre Wallace v. Kirschenbaum & Phillips, P.C.,* Case no. 7:19-cv-09306-PMH (S.D.N.Y. Oct. 08, 2019), ECF 1 (suing K&P for unlawfully collecting on invalid, previously settled judgment, eleven years after settlement); *Penister v. Kirschenbaum & Phillips, P.C.*, Case No. 7:11-cv-05855-KMK (S.D.N.Y. Oct. 22, 2011) (suing K&P for collecting on invalid debt); *Hector Ventura v. Kirschenbaum & Phillips, P.C.*, Case no. 1:19-cv-04427 (S.D.N.Y. May 15, 2019) (suing K&P for collecting on previously settled, post-judgment debt without meaningful attorney review).

**FIRST CAUSE OF ACTION**
Violation of the FDCPA, 15 U.S.C. §§ 1629e, 1692f, 1692g
Against All Defendants

70. The FDCPA, 15 U.S.C. § 1692e, prohibits a debt collector from using a "false, deceptive, or misleading representation or means in connection with the collection of any debt."

13

71. The FDCPA, 15 U.S.C. § 1692f, prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

72. The FDCPA, 15 U.S.C. § 1692g, requires that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice containing," among other things, a statement of the consumer's right to dispute the debt and to obtain the name and address of the original creditor.

73. Defendants violated the FDCPA, §§ 1692e, 1692f, 1692g, by making false, deceptive, and misleading representations, engaging in unfair and unconscionable practices, and failing to send required notices. Defendants' violations included, but were not limited to:

   a. Threatening to execute on, and executing on, an invalid judgment;
   b. Executing on the judgment against Plaintiff without undertaking a meaningful attorney review of the case;
   c. Executing on the judgment against Plaintiff without filing and serving an assignment of judgment;
   d. Executing on the judgment against Plaintiff without filing and serving a change of attorney form;
   e. Failing to send a validation notice;
   f. Making false and misleading statements;
   g. In bad faith, unduly prolonging legal proceedings and requiring Plaintiff to appear at unnecessary court dates.

74. As a direct and proximate result of Defendants' violations, Plaintiff has suffered compensable harm and is entitled to recover actual and statutory damages, costs, and attorneys' fees.

**SECOND CAUSE OF ACTION**
Violation of N.Y. Gen. Bus. § 349
Against All Defendants

75. New York General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business . . . in this state" and provides that "any person who has been injured

by reason of any violation of this section may bring an action in his own name" for injunctive relief, damages, and attorneys' fees.

76. Defendants violated N.Y. Gen. Bus. § 349 by engaging in deceptive acts and practices in the conduct of their business. Defendants' violations included, but were not limited to:

    a. Threatening to execute on, and executing on, an invalid judgment;
    b. Executing on a judgment against Plaintiff without undertaking a meaningful attorney review of the case;
    c. Executing on a judgment against Plaintiff without filing and serving an assignment of judgment;
    d. Executing on a judgment against Plaintiff without filing and serving a change of attorney form;
    e. Failing to send a validation notice;
    f. Making false and misleading statements;
    g. In bad faith, unduly prolonging legal proceedings and requiring Plaintiff to appear at unnecessary court dates.

77. Defendants' actions were consumer oriented.

78. Defendants committed the above-described acts willfully and/or knowingly.

79. Defendants' wrongful and deceptive acts have caused injury and damages to Plaintiff.

80. As a direct and proximate result of Defendants' violations, Plaintiff has suffered compensable harm and is entitled to recover actual and treble damages, costs, and attorneys' fees.

### THIRD CAUSE OF ACTION
Violation of N.Y. Jud. Law § 487
Against Defendant Unger

81. New York Judiciary Law § 487 states that "[a]n attorney or counselor who . . . [i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the

court or any party . . . is guilty of misdemeanor [and] . . . forfeits to the party injured treble damages, to be recovered in a civil action."

82. Defendant violated New York Judiciary Law § 487 by engaging in deceit or collusion, or consenting to deceit or collusion, with the intent to deceive courts and opposing parties. Defendant's violations included, but were not limited to:

   a. Threatening to execute on, and executing on, an invalid judgment;
   b. Executing on a judgment against Plaintiff without undertaking a meaningful attorney review of the case;
   c. Executing on a judgment against Plaintiff without filing and serving an assignment of judgment;
   d. Executing on a judgment against Plaintiff without filing and serving a change of attorney form;
   e. Failing to send a validation notice;
   f. Making false and misleading statements;
   g. In bad faith, unduly prolonging legal proceedings and requiring Plaintiff to appear at unnecessary court dates.

83. Defendant committed the above-described acts willfully and/or knowingly.

84. Defendant's wrongful and deceptive acts have caused injury and damages to Plaintiff.

85. As a direct and proximate result of these violations of New York Judiciary Law § 487, Plaintiff has suffered compensable harm and is entitled to recover actual and treble damages.


WHEREFORE, Plaintiff requests that this Court enter judgment jointly and severally as against all Defendants:

   a. Declaring that Defendants have committed the violations of law alleged in this action;
   b. Awarding to Plaintiff:

      i. actual and/or compensatory damages against all Defendants in an amount to be proven at trial;

      ii. statutory damages pursuant to the FDCPA;

      iii. treble damages pursuant to N.Y. G.B.L. § 349(h) and N.Y. Jud. Law § 487;

      iv. disbursements, costs, and attorneys' fees pursuant to the FDCPA and N.Y. G.B.L. § 349; and

c. Granting such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues triable by a jury.

Dated: December 3, 2025
New York, New York

Respectfully submitted,

By:

*/s/ Danielle Tarantolo*
Danielle Tarantolo
Jane Brennan
New York Legal Assistance Group
100 Pearl Street, 19th Fl.
New York 10004
(212) 613-6551
dtarantolo@nylag.org
jbrennan@nylag.org

*Counsel for Plaintiffs*